STATE OF NEW JERSEY v. FRANK BOWMAN.

Argued November 13, 1911—Decided November 29, 1911.

A defendant under indictment applied for a writ of *certiorari* to remove into this court said indictment, also the order under which a special term of the Oyer was held, also an order disqualifying the sheriff from selecting the grand jury, and also an order appointing elisors to select and summon the grand jury by which the defendant was indicted, for the purpose of basing a motion to quash the indictment upon such extraneous matters. *Held,* that the writ would not be allowed for the purpose of enabling the court to entertain a motion to quash based upon grounds extraneous to the indictment.

On application for a *certiorari*.

Before Justices GARRISON, PARKER and BERGEN.

For the motion, *George A. Bourgeois* and *Gilbert Collins.*

*Contra, Edmund Wilson,* attorney-general.

The opinion of the court was delivered by

GARRISON, J.   The defendant being under indictment for illegal voting at a general election held in Atlantic county on November 8th, 1910, applies for the allowance of a writ of *certiorari* to remove into this court not only such indictment and its caption, but also the order under which a special term of the Oyer of that county was held on July 5th, 1911, also the order of said court disqualifying the sheriff of said county from selecting and summoning a grand jury to serve at said special term and the proceedings on which such order was based, and also the order appointing elisors' to select and summon a grand jury at said special term by whom the said defendant was indicted.   The avowed purpose of the defendant (and the sole object of the writ applied for) is to move in this court to quash the said indictment, not for anything that ap-

pears upon its face or by its caption, but solely upon the ground that the grand jury by whom the indictment against him was found was not legally selected or summoned under the several orders and proceedings he now seeks to have brought before this court for review. Presumably, the testimony necessary to support some of the contentions advanced will be sought to be taken under a rule in such *certiorari* with the expectation that upon the preponderance of testimony or by drawing the proper inference therefrom, this court will determine the facts and apply the law to the facts thus established.

In the case of *State* v. *Rickey,* 4 *Halst.* 293, Mr. Justice Ford, in overruling an offer to read affidavits upon a motion to quash an indictment, said: "This is a motion to quash an indictment and comes in the place of a demurrer, and therefore I see no reason why we should depart from the rules applicable to demurrers. * * * I think, therefore, that the affidavits cannot be read." He also said in the same connection, "If the indictment is sufficient upon the face of it we cannot quash."

This last statement, which is not an accurate one as applied to the power of the court, was probably intended as a declaration of a settled judicial policy; the power of this court to draw into it a criminal cause at any stage for any lawful purpose can hardly be questioned in view of the constitutional intrenchment of its historical powers. The settled policy to which, we take it, Mr. Justice Ford alluded has been continued to this day by the allowance of the writ of *certiorari* to bring into this court, for the purposes of a motion to quash, indictments that on their face or by their caption appeared to be incapable of supporting a judgment of conviction. The two essential factors in this established exercise of discretion are —*first,* that the question thus calling for preliminary decision is spread upon the face of the record, and *second,* that being thus established it enables the *allocatur* to be withheld where its probable effect would be merely to postpone the trial of the indictment.

It is evident, therefore, that where, as in the present case, the grounds of the motion to quash do not appear by the in-

dictment or its caption, but are to be shown by matters *aliunde,* the essential factors of such established discretion are conspicuously absent, and, if the judicial policy alluded to be well founded, should lead this court to refrain from interference with the orderly progress of the cause. Such a course deprives the defendant of none of the rights secured to him by the constitution to be worked out in the courts provided for that purpose; of these rights he is not in any sense deprived by our refusal to interfere with the orderly progress of the cause.

The matter for present decision is, therefore, not whether arguable questions may arise if certain proceedings and facts that are not shown by the indictment or its caption are laid before us by the return to our writ, but, whether, where such a course is necessary in order to present such debatable questions, our writ should go as it does in cases where we can see for ourselves on the face of the indictment a certain and sound basis for the exercise of our discretion.

The elaborate brief used by counsel of the defendant upon the argument dealt exclusively with the merits of the questions he sought the opportunity to raise in this court upon his view of the facts. Upon the argument the attorney-general insisted with much earnestness that the court in the exercise of sound discretion should not allow its prerogative writ to be thus used as a premature substitute for the orderly processes of the criminal law, and he pointed out some of the many embarrassments in the administration of justice that must result from the general adoption of such a course.

This called forth a supplemental brief of counsel for the defendant upon this point in which he cites and relies upon two cases, *State* v. *Nicholls,* 2 *South.* \*539, decided in 1819, and *State* v. *Rockafellow,* 1 *Halst.* 332, decided in 1796, in each of which, after indictments had been removed into this court (the ground of the *allocatur* not being stated, excepting that in the latter case it was upon the application of the attorney-general which is as of course), the court entertained and passed upon objections going to the legality of the grand jury arising upon a state of facts shown in or omitted by the caption, the fact in Nicholls' case being that no precept, such as was re-

quired prior to 1822, had been issued, while the Rockafellow case was decided upon a demurrer.

These cases are authority therefore upon a point that nobody questions, viz., the power of the court to entertain such objections; but as authority or precedent for the *allowance* of a *certiorari* for the sole purpose of entertaining a motion to quash upon grounds extraneous to the indictment or its caption, the cases cited are devoid of significance because they are silent as to the grounds upon which the discretionary allowance of the writ was obtained.

Even if these cases could be cited as exercises of discretion, they would be practically valueless because of the changes that have occurred, during the period of nearly a century that has elapsed since their decision, in the factors that enter into the discretion thus exercised. The population of the entire state then was hardly equal to that of a single city to-day; the calendar of this court in 1819 was probably not as large as that of a single branch of the court at a single term to-day; and the local courts were manned by judges unlearned in the law. These factors, and especially the last, might render it discreet in 1819 for this court to assume a more extended oversight than it is now possible for it to do in view of its congested list or necessary for it to do in view of the fact that the local tribunals are presided over by counselors of this court.

In the present case, this last consideration is unnecessary since the indictment is in the Oyer where a justice of this court presides.

If one defendant under indictment may thus take in advance the judgment of this court upon debatable questions that may arise at the trial or upon proper motions or pleadings in the trial court, all defendants may do so under like circumstances, else justice is not administered without respect to persons; and if all may do so, the allowance of our writ and its prosecution in this court and the Court of Errors and Appeals will mean a delay of from one to two years between the presentment of an indictment and its trial in cases where the contentions of the defendant were not well founded, which would quite often be the case in view of the delay thus obtain-

able, and the fact that sound discretion in the allowance of our writ could not be exercised as it is upon matters that are spread upon the face of the indictment.'

Public policy admonishes us against setting on foot a procedure having such possibilities—not to say probabilities.

It is not a question of power to be laid down as a rule of law, but of discretion to be soundly exercised in the particular case.

The reasons that determine our discretion in the present case, which have been sufficiently indicated, constrain us to withhold our *allocatur*.